DANIEL D. SULLIVAN *vs.* OLD COLONY STREET RAILWAY.

Bristol.    October 27, 1908. — November 30, 1908.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Negligence*, Street Railway. *Carrier. Damages.*

The mere fact that an electric car becomes derailed because of negligence on the part of the street railway company operating it does not give to a passenger thereon a right of recovery in tort against the company, unless he suffered damage therefrom.

Where, at the trial of an action of tort against a street railway company for damages alleged to have been received by a passenger by reason of the derailment of the car upon which he was riding, it is admitted by the defendant that the derailment was caused by its negligence and the plaintiff introduces evidence of damage resulting to him, nevertheless a verdict should not be directed for the plaintiff, since the jury are not bound to believe the evidence of the plaintiff as to damages.

Where an electric car is derailed by reason of negligence on the part of the operating company, and a passenger thereon is thereby prevented from reaching his

destination, the company is not necessarily liable for all of the consequences of the defendant's failure to transport the passenger to his destination, since it would not be liable for such of the consequences as could have been avoided by the plaintiff's conducting himself as a reasonable man would have done under the circumstances.

The intention of one boarding an electric street car, to be transported through several towns to a city, which is not communicated to the company operating the car, the passenger paying a fare in each town, does not place the company under obligation to transport the passenger to his intended destination.

At the trial of an action of tort against a street railway company by a passenger to recover for damages alleged to have been suffered by the plaintiff by reason of the derailment of the car upon which he was riding, the plaintiff alleged and introduced evidence tending to show that he waited three hours in the night while the car was being put back upon the track and, in consequence thereof, missed a car which would have taken him to his destination and was compelled to sleep in a car barn over night. Evidence introduced by the defendant tended to show that, shortly after the car left the track, an announcement was made near to the plaintiff by an employee of the defendant in a loud voice that the passengers by walking about a mile could reach another car which would seasonably take them to the destination which was the plaintiff's, but that the plaintiff did not adopt the suggestion. The plaintiff testified that he did not hear the announcement. The derailment of the car was admitted to be due to negligence of the defendant, but the question of the defendant's liability was left to the jury under instructions to the effect that, if they should find that the defendant as it contended properly notified the plaintiff and the other passengers and that the damages suffered by the plaintiff were due to his failure to conduct himself as a reasonable man should have under the circumstances, their verdict should be for the defendant. The jury found for the defendant. *Held*, that the charge was proper and that the finding of the jury was warranted.

TORT. The first count in the declaration alleged that while the plaintiff was a passenger on an electric car of the defendant marked " Newport," the car was derailed at Tiverton owing to the defendant's negligence " whereby the plaintiff was jolted and in many ways injured externally and internally." The second count alleged that the plaintiff, intending to go to Newport, took at Fall River a car of the defendant's marked " Newport " at 9.50 P. M. on August 3, 1905; that, through the defendant's negligence, the car was derailed at Tiverton, where the plaintiff " was obliged to wait three hours for the car to be put back on the rails "; that at Stone Bridge the defendant ferried the plaintiff across to the connecting car which was to carry him to Newport; that there the plaintiff was directed to board a car, which was marked " Newport," and which was waiting for the passengers who were to be carried further to their destination; that at Library Corner in Portsmouth the

car stopped and all passengers were told by the defendant to leave the car and that it was the end of the route; that the plaintiff got off believing he was near Newport and that when he discovered he was nine miles from Newport he walked back to the car barn for a distance of over two miles where he sought refuge for the night in one of the defendant's box cars; that the plaintiff was so exhausted that he stumbled as he tried to enter the box car and cut his legs and that in the morning the plaintiff was carried to Newport; that the defendant " did not perform the duty which it had undertaken as a common carrier and in consequence of which the plaintiff's nervous system was wrecked and his constitution broken down and he has been and now is under medical care and was and now is unable to attend to his business for all of which he seeks damage." *

At the trial in the Superior Court before *Dana*, J., the only witness for the plaintiff who testified as to the circumstances of the accident was the plaintiff himself. His testimony was substantially to the same effect as the allegations in the declaration. As to the derailment, he testified that it was violent and that he was much thrown about. He also stated that the night was foggy, misty and rainy, and that, while waiting three hours for the car to be put back on the track, he sat on an embankment at the side of the road. He stated that he did not hear any announcement made to the effect that, if the passengers for Newport would walk to the ferry they would be ferried over to the last car going to Newport that night.

The evidence for the defendant tended to show that there was practically no jar when the car left the rails at Tiverton, that, a short time after the accident, one of the defendant's employees announced in a loud voice that all passengers intending to go through to Newport should walk down to the ferry and go across to the car on the other side, which was the last car through, and that the car on the other side would wait; that after the announcement all the passengers whom the employee who made it saw left for the ferry; and that the embankment

---

* The declaration was in three counts, the first two as described above, and the third in contract. At the trial the plaintiff elected to proceed on the first two counts, and waived the third.

on which the plaintiff sat when the announcement was made was about twelve feet from the car.

Other facts are stated in the opinion.

At the close of the evidence, the plaintiff asked the judge to make the following rulings:

" 1. Upon all the evidence the plaintiff is entitled to recover on the first count.

" 2. Upon all the evidence the plaintiff is entitled to recover on the second count.

" 3. If the jury shall find that the plaintiff, when he boarded the car at Fall River, intended to be taken to Newport, and if the car that he boarded was bound for Newport, then the plaintiff is entitled to recover for all of the proximate consequences of the defendant's bringing the plaintiff only as far as Library Corner.

" 4. If the jury shall find that the plaintiff, when he boarded the car at Fall River, intended to be taken to Newport and that the car that he boarded was bound for Newport, then it was the duty of the defendant to bring him to Newport and the failure to do so will make the defendant liable for all the direct consequences of such failure unless the defendant made known to the plaintiff that this car would not go to Newport and provided another means of arriving at Newport which was reasonably accessible to the plaintiff. A general announcement to the passengers is not enough unless it was heard by the plaintiff or unless the announcement was made in such a manner and under such circumstances that it could be reasonably said to have been heard by the plaintiff.

" 5. If the jury shall find that an announcement was made that another car was waiting one mile away and that at the time of such announcement the plaintiff was sitting on the bank, then such announcement, if general, to all the passengers made once would not save the defendant unless that announcement was heard by the plaintiff."

The judge refused to make any of these rulings.

In the course of his charge the judge instructed the jury as follows:

" The only matters, then, of damages for you to consider are these: First, what was the effect upon the plaintiff of the jolts when the car was derailed? To what extent did they injure the

plaintiff?   And, secondly, how far was the plaintiff injured, if injured at all, by his exposure while waiting three hours for the car?   Of course, if you find that there was no necessity for his waiting that amount of time, and as a reasonable man he should not have waited that amount of time, why, he would not be entitled to recover for any consequence that may have followed from that exposure ; but if, on the other hand, there was nothing said to him about going down to the ferry and taking this other car, and nothing of all that that has been testified to by the defendant took place there, why, that presents another question ; but the real thing to determine on the facts as you find them in the case as to this particular point, is, Did the plaintiff act as a reasonable man would act under the conditions as they then and there existed by remaining there three hours ?

" Then the other injury for which the plaintiff might make a claim and concerning which you are to find a verdict is the injury incurred by exposure in the car barn. . . . If the plaintiff acted as a reasonable man would act, having the information that you find him to have had and his presence in the barn there was necessitated under all the circumstances of the case, and as a reasonable man acting reasonably he could not well have avoided being in the barn and staying there the whole night, why, then you can consider such exposure as he underwent there in the estimation of damages ; otherwise you cannot; and you could not permit him to recover for any damage that may have been occasioned by his stepping into the car.   Under our rules of law that damage would be too remote, and, within the decisions, could not be held by you to be attributable to the accident."

The plaintiff excepted to the whole charge.   The jury returned a verdict for the defendant, and the plaintiff alleged exceptions.

*D. R. Radovsky*, for the plaintiff.

*J. M. Swift*, for the defendant.

SHELDON, J.   No question was made at the trial but that the defendant was liable for any injury done to the plaintiff by reason of its car having left the track.   But if no injury was caused by this to the plaintiff, if he suffered no damage whatever from the defendant's negligence, then he would not be entitled

to recover. Although there has been negligence in the perform-
ance of a legal duty, yet it is only those who have suffered dam-
age therefrom that may maintain an action therefor. *Heaven*
v. *Pender*, 11 Q. B. D. 503, 507. *Farrell* v. *Waterbury Horse
Railroad*, 60 Conn. 239, 246. *Salmon* v. *Delaware, Lackawanna
& Western Railroad*, 19 Vroom, 5, 11. 2 Cooley on Torts,
(3d ed.) 791. Wharton on Negligence, (2d ed.) § 3. In cases
of negligence, there is no such invasion of rights as to entitle a
plaintiff to recover at least nominal damages, as in *Hooten* v.
*Barnard*, 137 Mass. 36, and *McAneany* v. *Jewett*, 10 Allen, 151.
Accordingly, the first and second of the plaintiff's requests for
rulings could not have been given, and the rulings made were
all that the plaintiff was entitled to.

The other rulings asked for could not have been given in the
form in which they were expressed, because the third stated
the rule of damages too broadly, so that the defendant would
have been held for damages resulting from the plaintiff's own
acts; the fourth was open to the same objection, and made the
right of the plaintiff to be carried through to Newport depend
merely upon his unexpressed intention, regardless of whether it
had been communicated in any way to the defendant, and
whether the defendant had undertaken to carry him to Newport
or not; and the fifth made the plaintiff's rights depend solely
upon his having heard the announcement made by the defend-
ant's servant, without regard to the question whether it was
seasonably and properly made. It was a question of fact for the
jury whether under the circumstances the defendant had given
sufficient notice of what was to be done in the existing emer-
gency. The questions involved in these requests were fully
covered by what was said to the jury. It could not have been
ruled that there was an absolute and unqualified obligation upon
the defendant, either by agreement with the plaintiff or as a
duty arising from the circumstances, to carry him to Newport.
He had procured no ticket, he had paid no fare to that place.
A separate fare was to be paid in each town upon the route as
it was passed through; and he seems to have been carried as
far as he had paid or offered to pay his fare. The attention of
the jury was carefully directed to the question whether the
defendant had properly notified the plaintiff and the other

passengers that those who wished to go to Newport should walk to the ferry, and there take the last through car, which would wait for them ; and under the instructions the jury must have settled this question in the defendant's favor, and have found that the plaintiff's exposure and subsequent failure to reach Newport were due to his own acts and to his own failure to conduct himself as a reasonable man should have done, rather than to any fault of the defendant. This makes it unnecessary to determine whether the judge went too far in saying that the jury could not find that there was a contract to carry the plaintiff from Fall River to Newport. And the ruling that he could not recover for the walk from Library Corner was assented to by his counsel, and has not been specifically complained of.

There was no error in what was said by the judge as to the measure of damages. It was the duty of the plaintiff, not only to do nothing to aggravate the results of the accident, but to use all reasonable care to lessen the injurious effects of what had happened. *Ingraham* v. *Pullman Co.* 190 Mass. 33. *French* v. *Vining*, 102 Mass. 132, 137. *Sherman* v. *Fall River Iron Works*, 2 Allen, 524, 526. *Loker* v. *Damon*, 17 Pick. 284. This was in substance the ruling made.

The plaintiff's misfortune seems to have been that the jury failed to believe much of his testimony; but this they had the right to do, even where it was uncontradicted. *Lindenbaum* v. *New York, New Haven, & Hartford Railroad*, 197 Mass. 314. *Commonwealth* v. *McNeese*, 156 Mass. 231.

*Exceptions overruled,*